June 8, 1908.

———o———

No. 4496.

(Court of Appeal, Parish of Orleans.)

## KEYSTONE LIFE INSURANCE COMPANY OF AMERICA VS. BERNARD VON SCHLEMMER.

Where the subscription for the capital stock in a corporation stipulates that the stock shall be paid for at the rate of a fixed sum each month until such stock is fully paid for, such a stipulation does not constitute a variance or conflict with a clause of

221

the act of incorporation which provides that the stock shall be paid for "in cash" the words "in cash" not meaning that the stock shall be fully paid for at the date of subscription or issuance, but that the stock shall be paid for in cash; that is, money, and not its equivalent.

Appeal from Civil District Court, Division "A."

R. J. Malcney, for Plaintiff and Appellee.

E. H. McCaleb, for Defendant and Appellant.

ESTOPINAL, J.   The plaintiff sued to recover of the defendant the sum of twelve hundred and fifty dollars ($1250.00), averring that the defendant agreed to subscribe to fifty shares of the capital stock of the plaintiff company at the par value of twenty-five dollars ($25.00) per share; that all of the amount of said subscription is due and payable, but that defendant has failed and ref·sed to pay the same.

The defense is a general denial.

There was judgment rendered by the District Court for the plaintiff as prayed for, and defendant has taken this appeal therefrom.

The burden of the defense of non-liability for the price of the capital stock admittedly subscribed for by the defendant is pitched upon what he contends to be a fatal variance between the "prospectus" of the company and the agreement to subscribe, drawn in conformity to said "prospectus" and signed by Von Schlemmer, defendant, and the charter of the company in this to-wit:   That the contract signed by him whereby he bound himself to subscribe for the fifty shares of the capital stock of plaintiff company stipulates that the payment for said stock is to be made in accordance with the terms and conditions set forth in the "prospectus" of said company, namely, twenty-five (25) per cent per month until the full amount is paid, whereas, in the act of incorporation of plaintiff company is found a clause which reads as follows:

 "The capital stock if this corporation is hereby fixed at one hundred thousand dollars ($100,000.00), represented by four thousand (4000) shares of the par value of twenty-five dollars ($25.00), each, which said stock *shall be paid for in cash.*"

Defendant urges that the provision in the "subscription," relating to the payment of the stock is at variance with that in

the charter on the same subject, and that the subscriber who has not been made to pay for the stock subscribed to by him in accordance with the charter provision, cannot be made subsequently to pay under other terms.

Counsel urges that the term "said stock shall be paid for *in cash*," means that the full price of said stock shall be paid contemporaneously with the issuance of the certificate for said stock. If this interpretation of the charter provision was adopted it may be that under the authorities cited the case would be with the defendant, but we are firmly of the opinion that the defendant's position is wrong.

We are in full accord with the views expressed by the learned judge of the District Court in the construction which he places upon the term, "shall be paid for *in cash*."

It will be noted that following the provisions of the charter fixing the capital stock, the number of shares, their par value and their payment "in cash," that instrument contains also the following clause:

"This corporation shall became a going concern and may commence business when thirty-five thousand dollars ($35,000.00) of its capital stock shall have been subscribed for and paid for *in cash*."

It occurs to us that the words "paid for" expressed amply and fully the intention and design of the corporation that the consideration from the sale of stock must have been placed in the control or coffers of the company, and if the consideration was intended to be money or its equivalent, the recital of the charter could have ended with the word "paid for." The words "paid for." The words, "in cash," are either sulplusage, and therefore unnecessary, or they were designedly used and mean something.

The incorporators evidently intended that stock should not be sold for any consideration other than money, and the very nature of the enterprise is suggestive of the conclusion.

The opinion of the District Judge is so eminently correct that we adopt his reasons, and make them part of this opinion, as follows:

"I do not think that the defendant can be heard to deny his liability for his stock subscription. That he subscribed is proven by his signature to the "subscription to capital stock" of the planitiff company for fifty shares at $25 per share, and it is

proved that he has never paid. It is proved that he was a director of the company and he subscribed to make himself eligible as a director. He also brought a suit as he admits, in this Court, Division "C." to force the plaintiff company into liquidation, and lost his suit, serving as a stock holder. The only points made were:

"First: That the subscription, signed by the defendant, bears no date."

"I think this is immaterial, as Mr. Delahoussaye's testimony makes it clear that defndant's subscription was after he had been acting as a director. It was supposed by the company that stock owned by defndant's son belonged to defendant, and, the mistake Leing discovered, and it being suggested that defendant acquire said son's stock, and continue to act as director, defendant said 'I will do better, I will subscribe for fifty shares," etc., and it is fair to presume that the subscription list of fifty shares, bearing his signature, was there and then. er shortly after, subscribed for."

"This being fixed, the exact date is immaterial."

"The second point made is that said subscription for fifty shares at $25 per share is payable at twenty-five per cent per month until fully paid, whereas the charter provides that all stock shall be paid for in cash."

"It seems to me that these words 'in cash' mean that the company shall receive payment for stock only 'in cash,' i. e., money; and do not mean that it shall be fully paid for at the date of subscription or issuance. If defendant pays in money the full amount of his subscription, although by the terms he was to do this in four payments, i.e., twenty-five per cent per month, until fully paid, he will be paying for his stock 'in cash.' I take it that money is meant by words 'in cash' and not the terms or installment in which the money may be paid. It means that stock cannot be sold except for cash, i. e., money; that it cannot be issued for services rendered or goods furnished, or for labor, or any other thing or consideration except money."

The judgment appealed from is not error, and it is hereby affirmed.

June 8, 1908.

Rehearing refused June 22, 1908.

Writ granted by Supreme Court, Aug. 4, 1908.